GE LANCASTER INVESTMENTS, LLC, JE, Lancaster Investments, LLC, ME Lancaster Investments, LLC, DE Lancaster Investments, LLC, Lancaster Investment Partners, GJMD Investors, Inc., Spring Mill Investors, Inc., ME Spring Mill Investments, LLC, AE Spring Mill Investments, LLC, EE Spring Mill Investments, LLC, JE Spring Mill Investments, LLC, SE Spring Mill Investments, LLC, Steven H. Eribaum, SE Mt. Pleasant Investors, Inc., SE Mt. Pleasant Investments, LLC, Mt. Pleasant Partners, Ridgewood Investors, Inc., RDH Ridgewood Investors, Inc., RDH Ridgewood Investments, LLC, Appellees

v.

AMERICAN EXPRESS TAX AND BUSINESS SERVICES, INC. n/k/a RSM TBS ("RSM TBS"), Appellant.

Superior Court of Pennsylvania.

Argued Oct. 18, 2006.
Filed March 8, 2007.
Reargument Denied May 11, 2007.

Lynne Uniman, New York City, for appellant.

Jerome M. Marcus and David S. Senoff, Philadelphia, for GE Lancaster et al., appellees.

BEFORE: STEVENS, PANELLA, and JOHNSON, JJ.

OPINION BY JOHNSON, J.:

¶ 1 American Express Tax and Business Services, Inc. n/k/a RSM TBS ("TBS") appeals from the trial court order denying its motion to compel arbitration. TBS contends that the Appellees are bound by the arbitration clause found in their contract since the Appellees manifested their acceptance of the terms of the offer and obtained benefits of services provided for under the agreement. TBS argues that the Appellees' failure to sign the offer letter does not negatively impact the parties' agreement to arbitrate matters in dispute. After study, we conclude that TBS has waived its right to pursue arbitration

as it availed itself of the judicial process. Accordingly, we affirm the trial court's order.

¶ 2 The Appellees collectively consist of three groups of investors: (1) The Lancaster Group which includes GE Lancaster Investments, JE Lancaster Investments LLC, ME Lancaster Investments LLC, DE Lancaster Investments LLC, Lancaster Investment Partners, and GJMD Investors, Inc.; (2) The Spring Mill Group which includes Spring Mill Investors, Inc., ME Spring Mill Investments LLC, AE Spring Mill Investments LLC, DE Spring Mill Investments LLC, EE Spring Mill Investments LLC, SE Spring Mill Investments LLC, and Steven Erlbaum; and (3) The Mt. Pleasant Group which includes SE Mt. Pleasant Investors, Inc., SE Mt. Pleasant Investments LLC, and SE Mt. Pleasant Partners. The Ridgewood Group consisting of Ridgewood Partners, RDH Ridgewood Investors, Inc., and RDH Ridgewood Investments, LLC were part of the initial group of Plaintiffs but are not a party in the appeal. The Appellees and the Ridgewood Group commenced this action by Writ of Summons in the wake of a class action arising out of a massive fraud upon investors and the Internal Revenue Service ("IRS"). The fraud arises out of TBS's role in causing the Appellees to purchase tax-sheltered investments developed by a group of investment banks. Investors, including the Appellees, were made to understand that a Texas law firm, Jenkens & Gilchrist, had issued an objective and valid opinion letter stating that the IRS would treat these investments as well-founded and would receive them on a favorable basis for tax purposes.

¶ 3 Here, the Appellees hired TBS to provide services including preparation of federal and state corporate tax returns, accounting services related to preparation of the returns, and tax planning. On or about February 1, 2002, TBS sent Engagement Letters to each of the Appellees setting forth the proposed terms and conditions pursuant to their working relationship. The Engagement Letters included a form arbitration clause which reads in relevant part as follows:

> In the event that a dispute arises at any time between TBS and you that cannot be resolved through discussion, you agree to submit to binding arbitration under the commercial arbitration rules of the American Arbitration Association. Neither you nor TBS may claim or receive any amount as punitive, exemplary, or consequential damages. The arbitrator shall award the winning party in the dispute its reasonable costs, expenses and attorney fees. The decision of the arbitrator shall be binding on both TBS and you.

Engagement Letter, Reproduced Record (R.R.) at 192a, 197a, 202a. The Appellees received but did not sign the Engagement Letters.

¶ 4 TBS prepared the Appellees' tax returns including making the tax-sheltered investments. The Appellees paid TBS for its services. Subsequently, the IRS rejected the claims of tax minimization supported by these shelters. The IRS imposed penalties and interest on the Appellees and others who had made such investments. The IRS and state taxing authorities found that TBS should have known that there was no basis for the position the Appellees had taken in their tax returns. The Appellees paid millions of dollars in penalties and interest. It was later determined that the Jenkens law firm had not issued an objective opinion letter and instead was the primary proponent of the tax shelters and one of the beneficiaries of each sale.

¶ 5 The Appellees commenced this action in December of 2004 by filing a Prae-

cipe to Issue Summons without a Complaint. The Appellees then filed a Motion for Extension of Time to File a Complaint. TBS filed a response to this motion arguing the Appellees should not be given more time to file a complaint. The trial court granted the Appellees' motion. The Appellees subsequently filed a motion to compel pre-complaint discovery in the form of document production by TBS to enable them to plead their fraud claim with particularity. TBS responded to this motion arguing the Appellees' request should be denied because they have not fulfilled the requirements of pre-complaint discovery. TBS also sought the right to file an interlocutory appeal if the trial court allowed pre-complaint discovery. On October 20, 2005, the trial court granted, in part, the Appellees' pre-complaint document request. The trial court also denied TBS's request to file an interlocutory appeal. Thereafter, on November 9, 2005, TBS filed a Motion to Compel Arbitration and For a Stay of Action. The Honorable Albert W. Sheppard, Jr. denied TBS's motion in an order dated December 27, 2005. TBS filed an appeal of this order and this Court granted TBS's motion for a stay pending appeal.

¶ 6 TBS now appeals, raising a single issue:

Whether Appellees are bound by a broad arbitration clause included in a written engagement letter that, although not signed by Appellees, sets forth the terms and conditions pursuant to which Appellees specifically retained Appellant to perform tax preparation services, where Appellees authorized the performance of said services after receiving the engagement letter, Appellees themselves performed as required under the engagement letter, Appellees paid for the services performed, Appellees and Appellant had no relationship outside the engagement letter, and the claims

Appellees intend to assert arise from the services performed by Appellant as provided for under the engagement letter[?]

Brief for Appellant at 3.

¶ 7 TBS's sole argument relates to the trial court's denial of their motion to compel arbitration. Brief for Appellant at 7–11. We note that "[o]ur review of a claim that the trial court improperly denied ... a petition to compel arbitration is limited to determining whether the trial court's findings are supported by substantial evidence and whether the trial court abused its discretion in denying the petition." *Levy v. Lenenberg*, 795 A.2d 419, 422 (Pa.Super.2002).

¶ 8 Preliminarily, the Appellees argue that TBS waived its right to go to arbitration because of its conduct in the trial court. Brief for Appellees at 3–4. It is well-settled that "[a]s a matter of public policy, our courts favor the settlement of disputes by arbitration." *Goral v. Fox Ridge, Inc.*, 453 Pa.Super. 316, 683 A.2d 931, 933 (1996). "Nevertheless, the right to enforce an arbitration clause can be waived." *Id.* "Waiver may be established by a party's express declaration or by a party's undisputed acts or language so inconsistent with a purpose to stand on the contract provisions as to leave no opportunity for a reasonable inference to the contrary." *Samuel J. Marranca Gen. Contracting Co., Inc. v. Amerimar Cherry Hill Assocs. Ltd. P'ship*, 416 Pa.Super. 45, 610 A.2d 499, 501 (1992). A party's acceptance of the regular channels of the judicial process can demonstrate its waiver of arbitration. *See Smay v. E.R. Stuebner, Inc.*, 864 A.2d 1266, 1278 (Pa.Super.2004) (stating acceptance of judicial process includes a party's failure to raise the arbitration issue promptly, a party's engagement in discovery, and a party waiting until it receives adverse rulings on pretrial motions before

raising arbitration). "However, a waiver of a right to proceed to arbitration pursuant to the term of a contract providing for binding arbitration should not be lightly inferred and unless one's conduct has gained him an undue advantage or resulted in prejudice to another he should not be held to have relinquished the right." *Kwalick v. Bosacco*, 329 Pa.Super. 235, 478 A.2d 50, 52 (1984).

¶ 9 TBS argues that it has not waived its right to arbitration because the Appellees have not filed a complaint in this action. Reply Brief for Appellant at 3 n. 1. TBS concludes that in the absence of such a pleading, "it would not have been appropriate to seek to compel arbitration." Reply Brief for Appellant at 3 n. 1. Ostensibly, TBS argues this is because the defense of arbitration is to be raised in new matter following the filing of a complaint. *See* Pa.R.C.P. 1030 (stating affirmative defenses, including arbitration and award, shall be pleaded in new matter). Admittedly, the case law of this jurisdiction, in which waiver of the right to pursue arbitration has been found, involves cases where the parties have accepted the judicial process after a complaint has been filed. *See, e.g., Teodori v. Penn Hills Sch. Dist. Auth.*, 413 Pa. 127, 196 A.2d 306, 310 (1964) (finding waiver of arbitration clause in contract after party failed to plead the defense of arbitration as new matter and allowed the case to be tried before a judge); *Goral*, 683 A.2d at 934 (finding party waived arbitration after accepting judicial process following the filing of a complaint); *Samuel J. Marranca*, 610 A.2d at 501–02 (same). However, unlike these cases which involve a filing of a complaint prior to a party waiving its right to pursue arbitration, in the case at bar, the trial court allowed the Appellees precomplaint discovery to adequately plead fraud with particularity. Further, we find nothing in these cases which would limit

the finding of waiver where the party seeking the right to pursue arbitration has availed itself of the judicial process prior to the filing of a complaint.

¶ 10 In *Samuel J. Marranca*, Marranca filed a writ of summons followed by a complaint against Amerimar for a failure to make payment under their contract. *See id.* at 499–500. Amerimar filed preliminary objections to the complaint alleging forum non-conveniens and improper venue which the trial court denied. *See id.* at 500. Thereafter, Amerimar filed an answer to the complaint. *See id.* Amerimar then filed a motion to compel arbitration and stay the judicial proceedings. *See id.* The trial court found Amerimar had waived its right to arbitration. *See id.* Our Court agreed, stating that Amerimar was precluded from pursuing arbitration once it had taken the first steps in accepting the judicial process. *See id.* at 501. Our Court found that Amerimar's conduct, including choosing not to file a petition to compel arbitration, not asserting arbitration as an affirmative defense, and waiting until it received an adverse ruling on pretrial motions before seeking to enforce the arbitration clause, indicated waiver. *See id.*

¶ 11 In *Goral*, the plaintiffs filed a complaint against the defendants raising numerous claims relating to an agreement for the sale of property. *See id.* at 932. The defendants filed a new matter wherein they set forth various assertions on why the plaintiffs claim did not have merit. *See id.* The defendants alternatively pleaded in its new matter that the claims are required to be submitted to common law arbitration as found in the agreement. *See id.* The plaintiffs served interrogatories and a request for production of documents. *See id.* The defendants objected to the request for discovery, arguing that the plaintiffs' claims must be submitted to

arbitration. *See id.* The trial court granted the plaintiffs' motion to compel discovery. *See id.* Subsequently, the defendants finally filed a motion to compel arbitration which the trial court denied finding they had waived their right to arbitration. *See id.* at 932–33. Our Court affirmed the trial court's denial, concluding that the defendants' "repeated references to the arbitration agreement [were] not sufficient to avoid a finding of waiver." *Id.* at 933. Our Court found that even though the defendants raised arbitration in its new matter, it did so "only as an alternative to their preferred option of winning a favorable ruling from the trial court." *Id.* Our Court further found that prior to filing the motion to compel arbitration, the defendants "did nothing to move the matter to arbitration[,]" and instead waited until "litigation resulted in an order requiring them to satisfy [ ] discovery requests ... to move the matter to arbitration." *Id.* at 934.

¶ 12 The above cases are similar in that the proper inquiry in determining whether a party has waived its right to pursue arbitration is not whether a complaint has been filed but whether the party seeking to compel arbitration has availed itself of the judicial process. We have found nothing in our jurisprudence which would indicate a party cannot accept the judicial process prior to the filing of a complaint. Indeed, as is the case here, a party may accept the judicial process prior to the filing of a complaint by attempting to win favorable rulings from the trial court on pre-complaint discovery motions so as to undermine the opposing party's ability to file a proper complaint. *See id.* at 933–34; *Samuel J. Marranca*, 610 A.2d at 501.

■ ¶ 13 Here, the Appellees initiated this case by Writ of Summons on December 2, 2004. On or about February 23, 2005, the Plaintiffs served a request for production of documents to TBS. On March 11, 2005, the Appellees filed a motion to extend the time to file a complaint. TBS filed a response to this motion indicating the Appellees should not be allowed more time to file a complaint and that the Appellees are not entitled to pre-complaint discovery. TBS also stated that it would seek arbitration as soon as the Appellees filed a complaint. *See* TBS Response to Plaintiff's Motion for Extension of Time within which to File Complaint, 4/6/05, at 6, R.R. at 45a. The trial court granted the Appellees more time within which to file a complaint on April 15, 2005. Subsequently, on April 21, 2005, the Appellees filed a motion to compel discovery so they could raise claims of fraud against TBS with particularity. TBS responded to this motion arguing that the Appellees' request should be denied because they have not fulfilled the requirements for pre-complaint discovery and the request contravenes the Pennsylvania Rules of Civil Procedure as the request is overbroad and unduly burdensome. Again, TBS raised the issue of arbitration, but stated that it would raise it as soon as the Appellees filed a complaint. *See* TBS Response to Plaintiff's Motion to Compel Discovery, 5/11/05, at 2, R.R. at 67a.

¶ 14 On June 28, 2005, the trial court granted the Appellees' request provided that the discovery parameters were narrow and embodied only those documents needed to file a complaint. On July 18, 2005, the Appellees submitted an amended document request. Again, TBS filed a response to this request stating it was overly broad and that the trial court should deny the Appellees' attempt at pre-complaint discovery. TBS also requested that if the trial court did grant the pre-complaint discovery, it should certify its order so that TBS could appeal the order to this Court. *See* TBS Memorandum of

Law in Support of its Motion to Deny Appellees' Amended Requests for Pre-Complaint Discovery, 8/19/05, at 6–7, R.R. at 127a–128a. TBS did not raise the arbitration issue in its response. On October 20, 2005, the trial court ordered TBS to provide the Appellees with certain documents and ordered a complaint be filed by December 30, 2005. *See* Order, 10/20/05, at 1–2, R.R. at 130a–131a. On November 9, 2005, TBS, some ten months after the Appellees had filed a Writ of Summons and more than six months after the filing of the motion to compel pre-complaint discovery, filed a motion to compel arbitration. The trial court denied this motion.

¶ 15 TBS's actions indicate it availed itself of the judicial process for a resolution of disputes arising under the contract. It is undisputed TBS raised the arbitration clause in its numerous responses to the trial court; however, TBS set forth this argument only as an alternative to the preferred option of the Appellees not receiving any pre-complaint discovery. This bifurcated approach is not required by our Courts. *See Goral*, 683 A.2d at 933. Here, the arbitration clause is broad and covers "any and all disputes" between the parties. Engagement Letter, Reproduced Record (R.R.) at 192a, 197a, 202a. Moreover, TBS acknowledged that the only relationship between TBS and the Appellees was for the preparation of tax returns, seemingly under the terms of the Engagement Letters. *See* Affidavit of Robert A. Goldstein, 11/3/05, at 3 (unnumbered), R.R. at 188a. Clearly, TBS could have raised the right to pursue arbitration pursuant to the Engagement Letters immediately upon learning of any dispute between the parties. Instead, it responded to the merits of the Appellees' motions and sought to win a favorable ruling from the trial court knowing that if it did win, the Appellees would not be able to plead a case of fraud with particularity. It was only after the trial court granted the Appellees' motion for pre-complaint discovery that TBS filed a motion to compel arbitration. Here, TBS also argued that the trial court should allow it to pursue an interlocutory appeal related to the allowance of pre-complaint discovery. This request makes evident that TBS accepted the judicial process in order to win a favorable ruling if not from the trial court, then from this Court. To allow TBS to pursue arbitration here would unfairly prejudice the Appellees since, "in addition to the costs incurred ... to date, [they] would be required to re-initiate legal proceedings before the American Arbitration Association incurring additional costs[.]" *Goral*, 683 A.2d at 934. We further note that no rule in the Pennsylvania Rules of Civil Procedure requires a party to await the filing of a complaint before filing a motion to compel arbitration. *See Goral*, 683 A.2d at 934; *see also RCN Telecom Servs. of Philadelphia, Inc. v. Newtown Township, Bucks County*, 848 A.2d 1108, 1113 (Pa.Cmwlth.2004) (concluding that RCN waived its right to pursue arbitration where it accepted the judicial process under local agency law and did not raise the issue of arbitration until receiving an adverse ruling at a hearing before the Board of Supervisors of Newtown Township).

¶ 16 Finally, TBS's argument that it could not have waived its right to pursue arbitration since no complaint was filed does not have merit as it filed a motion to compel arbitration before the Appellees filed a complaint. This further demonstrates that if TBS truly wanted to pursue arbitration, it could have raised the motion at any time. Here, TBS "cannot avail itself of the judicial process and then pursue an alternate route when it receives an adverse judgment." *Samuel J. Marranca*, 610 A.2d at 501–02. "To allow litigants to pursue that course and thereby avoid the

waiver doctrine and our rules of court is to advocate judicial inefficiency; this we are unwilling to do." *Id.* at 502.

¶ 17 As such, we conclude that TBS has waived its right to pursue arbitration.

¶ 18 Order **AFFIRMED.**