J-A04038-25
J-A04039-25
J-A04040-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| H&M HOLDINGS GROUP, LLC, ASSIGNEES OF MEMBERS FIRST FEDERAL CREDIT UNION | : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : : : | |
| JANE H. PATRONO | : : | No. 518 MDA 2024 |
| Appellant | : | |

Appeal from the Order Entered April 4, 2024
In the Court of Common Pleas of Adams County
Civil Division at No(s):  2018-SU-1293

| | | |
|---|---|---|
| H&M HOLDINGS GROUP, LLC | : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : : : : : | |
| ALAN KIM PATRONO | : : : | |
| Appellant | : | No. 519 MDA 2024 |

Appeal from the Order Entered April 4, 2024
In the Court of Common Pleas of Adams County
Civil Division at No(s):  2018-SU-1293

| | | |
|---|---|---|
| H&M HOLDINGS GROUP, LLC, ASSIGNEE OF MEMBERS FIRST FEDERAL CREDIT UNION | : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : : : : | |
| JONATHAN PATRONO | : : | No. 520 MDA 2024 |
| Appellant | : | |

J-A04038-25
J-A04039-25
J-A04040-25

Appeal from the Order Entered April 4, 2024
In the Court of Common Pleas of Adams County
Civil Division at No(s):  2018-SU-1293

BEFORE:  LAZARUS, P.J., NICHOLS, J., and SULLIVAN, J.

MEMORANDUM BY SULLIVAN, J.:          **FILED: MAY 15, 2025**

Jane H. Patrono ("Jane"), Alan Kim Patrono ("Alan"), and Jonathan Patrono ("Jonathan") (collectively, "the Patronos") appeal from the order denying their petitions to compel arbitration.[1]  We affirm.

This appeal arises out of a family dispute over the management and debts of a now-bankrupt winery and hard cider producer, known as "Hauser Estate."  Jane is the daughter of Helen Hauser ("Helen").  Jane is married to Alan, and they have two adult children, Jonathan and Polly Patrono Carlson ("Polly").  Alan and Jonathan are attorneys.  Hannah M. Hauser ("Hannah") and Melinda H. Davis ("Melinda") are Jane's sisters.

Helen had owned several properties in Adams County and used her land for her family's apple orchard business.  In 2006, at Jonathan's suggestion, the family converted their orchard business into a wine and hard cider business under Hauser Estate.  Jonathan held a majority of the voting shares of Hauser Estate and the position of president.  Hannah and Melinda held

_____

[1] These interlocutory appeals involving the refusal to compel arbitration are properly before this Court.  **See** Pa.R.A.P. 311(a)(8); **see also** 42 Pa.C.S.A. §§ 7320(a)(1), 7321.29(a)(1), 7342(a) (discussing right to appeal order denying motions to compel arbitration).  We have consolidated these appeals *sua sponte* as they involve the same facts, procedures, and legal issues, and the Patronos have filed identical briefs in all three appeals.

- 2 -

minorities of the voting shares. In 2007, the family also created Hauser Family Farms ("HFF"), a limited liability corporation ("LLC"), to which Helen transferred the real property on which Hauser Estate was operating. Helen died in 2012.

Hauser Estate obtained loans from Members First Federal Credit Union ("Members First"), which Hannah, Melinda, Jane, Alan, and Jonathan each secured with personal guaranties ("the guaranties"). The guaranties contained arbitration clauses and confession of judgment provisions.[2] Alan

_____

[2] The arbitration clauses stated:

> Borrower and Guarantor and Lender agree that all disputes, claims and controversies between them whether individual, joint, or class in nature, arising from this Guaranty or otherwise, including without limitation contract and tort disputes, shall be arbitrated pursuant to the Rules of the American Arbitration Association in effect at the time the claim is filed, upon request of either party. No act to take or dispose of any Collateral shall constitute a waiver of this arbitration agreement or be prohibited by this arbitration agreement. This includes, without limitation, obtaining injunctive relief or a temporary restraining order; invoking a power of sale under any deed of trust or mortgage; obtaining a writ of attachment or imposition of a receiver; or exercising any rights relating to personal property, including taking or disposing of such property with or without judicial process pursuant to Article 9 of the Uniform Commercial Code. Any disputes, claims, or controversies concerning the lawfulness or reasonableness of any act, or exercise of any right, concerning any Collateral, including any claim to rescind, reform, or otherwise modify any agreement relating to the Collateral, shall also be arbitrated, provided however that no arbitrator shall have the right or the power to enjoin or restrain any act of any party. Judgment upon any award rendered by any arbitrator may be entered in any court having

*(Footnote Continued Next Page)*

also drafted a contribution agreement among the three sisters, Melinda, Hannah, and Jane, that provided each sister would be one-third liable for future loans made by any one of the sisters, or Alan, to benefit Hauser Estate ("contribution agreement").[3]

Hauser Estate began to fail, and it defaulted on the Members First loans. The family discussed a sale of Hauser Estate but could not agree on a buyer. As the disputes among the family members increased, Alan drafted a corporate governance agreement for Hauser Estate ("governance agreement").[4]  Still, Hannah and Melinda believed Jane, Alan, and Jonathan

_____

jurisdiction.  Nothing in this Guaranty shall preclude any party from seeking equitable relief from a court of competent jurisdiction.  The statute of limitations, estoppel, waiver, laches, and similar doctrines which would otherwise be applicable in an action brought by a party shall be applicable in any arbitration proceeding, and the commencement of an arbitration proceeding shall be deemed the commencement of an action for these purposes.  The Federal Arbitration Act shall apply to the construction, interpretation, and enforcement of this arbitration provision.

Compl., Cumberland County, 2019-12302, 11/27/19, Exs. B & D.

[3] While the Patronos asserted the contribution agreement bound Hannah and Melinda, Hannah and Melinda disputed whether the contribution agreement was enforceable as it did not contain all terms they requested.  *See* Answer to Third Am. Compl. with Am. New Matter and Counterclaims, 4/5/22, at 60-61, 74-75; Answer to Am. New Matter and Counterclaims and New Matter, 9/12/22, at 12.

[4] The Patronos asserted the governance agreement created in Hauser Estate an executive committee to resolve family disputes.  *See* Answer to Third Am. *(Footnote Continued Next Page)*

were mismanaging Hauser Estate for their own personal gains, while Jane, Alan, and Jonathan questioned whether Hannah and Melinda were acting in Hauser Estate's best interests.

Events surrounding the family disputes accelerated in July 2018. Hannah and Melinda formed H&M Holdings Group, LLC ("H&M"), which purchased the notes and guaranties on the Members First loans. Around that time, the Patronos engaged in numerous transfers of their interests in real property to Polly, Jane and Alan's daughter/Jonathan's sister ("the 2018 transfers"). By the end of July 2018, H&M filed complaints in Adams County for confession of judgment against the Patronos based on the notes and guaranties H&M acquired from Members First ("the first confessed judgments"). A court granted the Patronos' motions to strike off the first confessed judgments after unsuccessful attempts at mediation.[5]

Meanwhile, Hannah, Melinda, H&M, and others (collectively, "the H&M parties") commenced a series of actions in various counties, which included

---

Compl. with Am. New Matter and Counterclaims, 4/5/22, at 67-68. They also claimed that the governance agreement had the goal of preserving the Members First loans and preventing defaults on the loans. ***See e.g.***, Jane's Pet. to Strike or Open, Cumberland County, 2019-12302, 12/26/19, at 9. Hannah and Melinda admitted there was a governance agreement but denied that it created an executive committee. ***See*** Answer to Am. New Matter and Counterclaims and New Matter, 9/12/22, at 12.

[5] The Adams County court struck the first confessed judgments because H&M failed to attach proper documentation to its complaints and improperly filed notices under both Pa.R.Civ.P. 2958.1 and 2958.3. ***See*** Adams County Order and Op., 2018-SU-813 to 815, 11/1/19, at 3-6.

J-A04038-25
J-A04039-25
J-A04040-25

filing *lis pendens* against the Adams County properties involved in the 2018 transfer and filing a complaint in Dauphin County, which the parties later agreed to transfer to Adams County.

Additionally, in Cumberland County, H&M filed new complaints for confession of judgment against the Patronos based on the notes and the guaranties H&M purchased from Members First.  The Patronos, in relevant part, responded with petitions to open wherein they pleaded defenses challenging: (1) whether and when Hauser Estate defaulted on the Members First loans; (2) whether any prior default had been cured; (3) whether default or non-default rates of interest were included in the amounts confessed; (4) whether Hannah and Melinda breached governance agreements when they purchased the notes and guaranties; (5) whether Hannah and Melinda breached their fiduciary duties as co-guarantors; (6) whether H&M was a "sham corporation;" and (7) whether Hannah and Melinda breached the contribution agreement.  ***See e.g.***, Jane's Pet. to Strike or Open, Cumberland County, 2019-12302, 12/26/19, at 23-28.  The Patronos' petitions to open did not refer to the arbitration clauses in the guaranties.[6]  The Cumberland County

---

[6] "A petition to open a confessed judgmentsis an appeal to the equitable powers of the court."  ***Neducsin v. Caplan***, 121 A.3d 498, 504 (Pa. Super. 2015) (internal citation and quotation marks omitted).  A trial court may open a confessed judgment:

*(Footnote Continued Next Page)*

- 6 -

court, following lengthy litigation there, opened the judgment and transferred the matter to Adams County ("the opened confessed judgments"). *See* Order, Cumberland County, 2019-12300 to 12302, 3/11/21, at 1-2.[7] Jane, Alan, and Jonathan also apparently filed a motion, in which H&M concurred, to coordinate the opened confessed judgments with the other actions in Adams County, which the Cumberland County court granted. *See* Order, Cumberland County, 2019-12300 to 12302, 5/3/21, at 1 (stating the Cumberland County

---

if the petitioner (1) acts promptly, (2) alleges a meritorious defense, and (3) can produce sufficient evidence to require submission of the case to a jury.

\* \* \* \*

A meritorious defense is one upon which relief could be afforded if proven at trial.

*Id*. at 506–07 (internal citations and quotation marks omitted).

[7] In Cumberland County, the parties each requested discovery, litigated discovery issues before a discovery master, and presented evidence over multiple days of hearings. The Cumberland County court concluded the Patronos pleaded sufficient evidence supporting two meritorious defenses, one concerning the date of the default, the other concerning whether Hannah and Melinda formed a sham company to protect their own personal assets. The Cumberland County court declined to reach any other possible defenses, including the Patronos' claims for offsets based on Hannah and Melinda's breach of the contribution agreement. *See* Order, Cumberland County, 2019-12300 to 12302, 3/11/21, at 2-3 & nn. 3, 5. Once the Cumberland County confessed judgments were opened, the subsequent proceedings were generally limited to the papers filed in the litigation to open the judgments. *See* Pa.R.Civ.P. 2960 ("If a judgment is opened in whole or in part the issues to be tried shall be defined by the complaint if a complaint has been filed, and by the petition, answer and the order of the court opening the judgment. There shall be no further pleadings. . . .").

court granted the Patronos' motion to coordinate actions); ***see also*** Order, Cumberland County, 2019-12300 to 12302, 4/7/21, at 1 (indicating H&M concurred in the motion to coordinate actions).

In an attempt to clarify the multiple actions commenced in and transferred to Adams County, the trial court ordered the H&M parties to file a third amended complaint ("third amended complaint"), while staying further proceedings on the opened confessed judgments transferred from Cumberland County. **See** Order, 8/16/21, at 1 (stating that "pursuant to agreement of the parties, further proceedings in these matters [the opened confessed judgments from Cumberland County] are stayed indefinitely pending further order of court") (some capitalization omitted).[8]

The H&M parties filed a third amended complaint, wherein they alleged the Patronos breached their fiduciary duties, conspired to breach fiduciary duties, committed professional malpractice, fraudulently transferred or conspired to fraudulently transfer property in violation of the Pennsylvania Uniform Voidable Transaction Act ("PUVTA")[9] ("the PUVTA claims"), and converted or conspired to convert apple crops, proceeds on apples, and funds from a different line of credit. **See** Third Am. Complaint, 9/7/21, at 33-47.

_____

[8] The trial court vacated the Cumberland County order coordinating the opened confessed judgmentsmatter with the other actions in Adams County. **See** Order, 8/16/21, at 1.

[9] **See** 12 Pa.C.S.A. §§ 5101-5114.

- 8 -

The Patronos filed an answer, new matter, and counterclaims, and, after the court sustained, in part, and overruled, in part, preliminary objections, filed an answer with amended new matter and counterclaims, which included several allegations and claims they first raised when opening the confessed judgments in Cumberland County, including: (1) H&M was a sham corporation; (2) Hannah and Melinda breached the contribution agreement; and (3) promissory estoppel related to the contribution agreement. *See* Answer to Third Am. Compl. with Am. New Matter and Counterclaims, 4/5/22, at 2, 53, 75-80, 85-94. Despite the overlap between the issues raised in their intended defenses to the opened confessed judgments and their defense and their counterclaims to the third amended complaint, the Patronos did not refer to the arbitration clauses in the guaranties in the answer, new matter, or counterclaims.

The parties then agreed to a nonjury trial on the PUVTA claims, to be followed by a jury trial on the remaining claims and counterclaims. The trial court, following the nonjury trial, found in favor of H&M and against the Patronos on the PUVTA claims, avoided numerous transfers from and to the Patronos, and enjoined the Patronos and Polly from engaging in further transfers without court approval. The trial court deferred a hearing on punitive

damages and attorney's fees until the resolution of the remaining claims in the third amended complaint.[10]

Meanwhile, the discovery proceedings continued on the remaining claims in the third amended complaint and counterclaims, and the counterclaims concerning the contribution agreement resulted in a particularly protracted discovery dispute. The H&M parties demanded further documentation to corroborate the Patronos' assertions Jane and Alan personally loaned Hauser Estate $3 million. Throughout discovery, the Patronos insisted they had turned over all documents in their possession or control: essentially, copies of checks and deposit records. The trial court held hearings in April 2023, June 2023, and September 2023, attempting to resolve the discovery dispute over Jane and Alan's personal loans. In October 2023, three days after the expiration of an extended discovery deadline, and ***eleven days before a scheduled trial date***, the Patronos' counsel averred Alan recently discovered thirty-seven boxes of Hauser Estate documents in his law office. That revelation prompted the H&M parties to file for default judgments as discovery sanctions. In November 2023, the trial court held additional hearings on the motion for default judgments, and, on February 8, 2024, entered default judgments against the Patronos and other defendants, on

_____

[10] The Patronos and Polly have separately appealed the interlocutory order enjoining them from transferring property without court approval. We address that appeal at J-A04036-25.

nearly all of the remaining claims in the third amended complaint, and on the Patronos' counterclaims. In the same February 8, 2024 order entering default judgments,[11] the trial court lifted the stay on the opened confessed judgment.

In March 2024, counsel for the Patronos contacted counsel for the H&M parties, and, for the first time, suggested the opened confessed judgments be submitted to arbitration. The H&M parties thereafter filed a preemptive emergency motion asking the trial court to find any right to demand arbitration waived. The Patronos did not reply to the emergency motion but, on March 12, 2024, filed a petition to compel arbitration and stay other proceedings. After further back-and-forth between the parties, the trial court, on April 4, 2024, denied the Petronos' petition to compel arbitration. The Patronos timely appealed, and both they and the trial court complied with Pa.R.A.P. 1925.

The Patronos raise the following issues for review:

1. Whether trial court erred in ruling that Patrono[s] had waived the right to arbitration without holding an evidentiary hearing and in the absence of sufficient undisputed facts.

2. Whether the [trial] court erred in finding waiver without finding prejudice to H&M or undue advantage to Patrono[s].

3. Whether the [trial] court erred in implicitly finding a late invocation of the arbitration provision without referring such issue to arbitration for determination.

The Patronos' Briefs at 4 (some capitalization omitted).

---

[11] Jane and Alan have separately appealed the interlocutory order entering default judgments as discovery sanctions. We address that appeal at J-A04037-25.

- 11 -

We consider the Patronos' issues together as they all address the fundamental question of whether the trial court erred or abused its discretion in finding they "waived" their right to demand arbitration. When reviewing an order denying a motion to compel, "we are limited to determining whether the trial court's findings are supported by substantial evidence and whether the trial court abused its discretion." ***DiDonato v. Ski Shawnee, Inc.***, 242 A.3d 312, 318 (Pa. Super. 2020) (internal citations and quotation marks omitted).

Generally,

> [w]hen one party to an agreement seeks to prevent another from proceeding to arbitration, judicial inquiry is limited to determining (1) whether a valid agreement to arbitrate exists between the parties and, if so, (2) whether the dispute involved is within the scope of the arbitration provision. If a valid arbitration agreement exists between the parties and [an] appellant's claim is within the scope of the agreement, the controversy must be submitted to arbitration.

***Highmark Inc. v. Hosp. Serv. Ass'n of Northeast Pennsylvania***, 785 A.2d 93, 98 (Pa. Super. 2001) (internal citations, quotation marks, and brackets omitted).

However, "[t]he right to enforce an arbitration clause can be waived." ***Id***. at 100. A party that avails itself of the judicial process by attempting to win favorable rulings from the judicial system following the filing of a complaint waives the right to proceed through arbitration. ***See DiDonato***, 242 A.3d at 318. As this Court explained,

> When deciding whether a party accepted judicial process to constitute waiver of a claim to arbitration, courts assess whether

- 12 -

the party: (1) failed to raise the issue of arbitration promptly; (2) engaged in discovery; (3) filed pretrial motions that do not raise the issue of arbitration; (4) waited for adverse rulings on pre-trial motions before asserting arbitration; or (5) waited until the case is ready for trial before asserting arbitration. Significantly, a party cannot avail itself of the judicial process and then pursue an alternate route when it receives an adverse judgment. To allow litigants to pursue that course and thereby avoid the waiver doctrine and our rules of court is to advocate judicial inefficiency; this we are unwilling to do. Nevertheless, the mere filing of a complaint or answer without resulting prejudice to the objecting party will not justify a finding of waiver of the right to arbitration.

*Id*. (internal citations and quotation marks omitted).

The Patronos assert the trial court erred in denying their petition to compel arbitration on the opened confessed judgments. Focusing on the language of the arbitration clauses, they note the clauses are broadly phrased to include all claims arising out of the guaranties, but also permit the parties to seek equitable relief from the courts. ***See*** The Patronos' Brief at 25-26, 37-40. They argue all litigation to strike the first confessed judgments and in the opening the confessed judgments in Cumberland County should not be counted against them because they were simply exercising their rights to seek equitable relief as permitted by the arbitration clauses. ***See id***. at 37-40.

The Patronos further argue they did not avail themselves of judicial processes after the Adams County court received the opened confessed judgments from Cumberland County. ***See id***. at 41-46. They emphasize the court had stayed proceedings on the opened confessed judgments in 2021, the H&M parties agreed to the stay, the opened confessed judgments remained dormant and separate from the actions on the third amended

- 13 -

complaint, and they timely sought arbitration as soon as the trial court lifted the stay in 2024. *See id*. at 23-24, 41-46, 58. The Patronos add they did not engage in discovery, file pre-trial motions, wait for adverse rulings, or wait until the eve of trial on the opened confessed judgments to seek arbitration. *See id*. at 41-46.

Although the Patronos acknowledge the extensive litigation on the third amended complaint, they argue, "It's difficult to understand how the goings-on of other cases from which the present case was 'severed' undercut the applicability of the [a]rbitration [c]lause[s] to *this* case, to which it unquestionably attaches." *Id*. at 44. They also assert the trial court failed to consider whether H&M was prejudiced or they gained an undue advantage while the opened confessed judgments were stayed, and the trial court should have permitted the arbitrators to determine whether they waived the right to arbitrate. *See id*. at 50, 61-63.

The trial court determined it properly denied the petition to compel arbitration of the opened confessed judgments because the Patronos availed themselves of judicial processes before and after the stay without ever raising the issue of arbitration. *See* Trial Ct. Op., 6/3/24, at 10-11. The court noted the Patronos had ample opportunity to preserve their right to arbitration when litigating the first confessed judgments in 2018 to 2019, and in the litigation on the opened confessed judgments in 2019 to 2021. *See id*. at 9-10. The court emphasized the Patronos agreed to submit to the jurisdiction of the

Adams County court by stipulating to the transfer of the opened confessed judgments from Cumberland County to Adams County without demanding arbitration. *See id*. at 10-11. The trial court added that while the opened confessed judgments was "procedurally paused," "it was unquestionably interwoven in the overarching litigation involving the parties, which was extremely active for over four additional years." *Id*. at 11. The court noted the parties litigated discovery on common issues in the opened confessed judgments, the third amended complaint, and the counterclaims. *See id*. at 11. The court concluded the prejudice resulting from the extensive litigation of the issues the Patronos now assert are arbitrable, was "self-apparent," and could address issues of waiver of arbitration based on the Patronos' conduct in availing themselves of judicial processes. *See id*. at 11-14.

Following our review, we conclude the record supports the trial court's findings.[12] The Patronos engaged in lengthy litigation to open the confessed judgments in Cumberland County, which included requests for discovery, the appointment of a discovery master, and multiple days of hearings. There is no indication the Patronos demanded arbitration, let alone referred to the arbitration clauses in the guaranties. Furthermore, when the Patronos sought to coordinate the opened confessed judgments with the other cases in the

---

[12] There is no meaningful dispute that the arbitration clauses in the guaranties, if properly invoked, would have governed the issues raised in the opened confessed judgment.

- 15 -

Adams County court, they did not invoke or refer to the guaranties' arbitration clauses.

Significantly, although the trial court in Adams County stayed proceedings on the opened confessed judgment, the Patronos then **_affirmatively raised defenses and/or counterclaims_** to the third amended complaint identical to the ones they intended to raise in the opened confessed judgment. These included claims that: (1) H&M was a sham corporation; (2) the breach of the contribution agreement; and (3) breaches of fiduciary duties as co-guarantors. **_Compare_** Answer, Am. New Matter, and Counterclaims, 4/5/22, at 2 (denying H&M is a bona fide business entity and asserting it was a "sham" corporation), 75-78 (counterclaims for breaches of the contribution agreement), 85-94 (counterclaims for breaches of fiduciary duties as co-guarantors); **_with_** Jane's Pet. to Strike or Open, Cumberland County, 2019-12302, 12/26/19, at 24-26 (asserting breach of fiduciary duty as co-guarantors), 26-27 (asserting H&M was a sham corporation), 27 (seeking offset for breaches of the contribution agreement). The Patronos not only raised these claims after the stay on the opened confessed judgment, but also engaged in a nearly year-long discovery dispute over their disclosure of evidence to substantiate their counterclaim that Hannah and Melinda breached the contribution agreement, all without notifying the court that the same issues could be subject to arbitration.

Although a party may promptly raise a right to enforce an arbitration provision and take limited steps to preserve its rights and interests during discovery, *see Smay v. E.R. Stuebner*, *Inc.*, 864 A.2d 1266, 1278 (Pa. Super. 2004), the facts of this case more closely resemble those in *Stanley-Laman Grp., Ltd. v. Hyldahl*, 939 A.2d 378, 387-88 (Pa. Super. 2007), and *GE Lancaster Investments, LLC v. Am. Exp. Tax & Bus. Servs., Inc.*, 920 A.2d 850, 856 (Pa. Super. 2007), where parties availed themselves of judicial processes in an attempt to secure advantages and acted inconsistently with the right to arbitration.[13] Thus, we discern no basis to conclude the trial court abused its discretion when concluding Jane, Alan, and Jonathan waived their

_____

[13] In *Smay*, this Court concluded a party did not waive its right to enforce an arbitration provision where it consistently asserted its right to arbitration and used the judicial system only to preserve that right and protect its interests during discovery after timely invoking an arbitration clause. *See Smay*, 864 A.2d at 1278. In *Stanley-Laman Grp.*, this Court concluded parties availed themselves of judicial processes and thereby waived their right to seek arbitration when they sought, and obtained, a preliminary injunction from the court, filed a complaint seeking damages, responded to the defendant's answers and counterclaims, and engaged in discovery, before requesting arbitration. *See Stanley-Laman Grp.*, 939 A.2d at 387. In *GE Lancaster Investments*, this Court concluded a defendant availed itself of judicial processes, when, after the plaintiff commenced an action by writ of summons and the defendant sought to compel the filing of a complaint, the defendant opposed the plaintiff's motions to extend the time for filing a complaint and for pre-complaint discovery. *See GE Lancaster Investments*, 920 A.2d at 856. There, the defendant sought to compel arbitration only after the trial court granted limited pre-complaint discovery and extended the time for filing a complaint. *See id*.

right to arbitration.[14]  Moreover, given the Patronos' dilatory conduct during the extensive litigation of the third amended complaint, and discovery on their counterclaims, we agree with the trial court that the unfair prejudice and unfair advantage is self-apparent.  **See Goral v. Fox Ridge, Inc.**, 683 A.2d 931, 934 (Pa. Super. 1996) (agreeing with a party that requiring arbitration would result in unfair prejudice because in addition to the costs of litigation already incurred, arbitration would carry additional costs and allow the party seeking to compel arbitration to re-raise a statute of limitations defense). Thus, finding no abuse of discretion in the trial court's decision to deny the Patronos' petition to compel arbitration, we affirm.

Order affirmed.

---

[14] This Court has acknowledged certain waivers of the right to arbitration are matters for the arbitrators to decide.  **See Highmark**, 785 A.2d 93, 100 (Pa. Super. 2001) (stating that "[w]hile a party can waive the right of arbitration, the question of the timeliness of a demand for arbitration is not of interpretation of the agreement and not one of the existence or scope of the arbitration provision; it is thus outside the bounds of our review and its resolution must be left to arbitration") (internal citations and quotation marks omitted).  However, once a party avails itself of judicial processes, a court may determine whether the party's conduct in court constitutes waiver.  **See GE Lancaster Investments**, 920 A.2d at 856; **Smay**, 864 A.2d at 1278; **Stanley-Laman Grp.**, 939 A.2d at 387.  To the extent the Patronos fault the trial court for not holding a hearing before determining waiver for availing oneself of judicial processes, they do not cite, and we have not found, any authority requiring a hearing.

J-A04038-25
J-A04039-25
J-A04040-25

Judgment Entered.

*Benjamin D. Kohler*

Benjamin D. Kohler, Esq.
Prothonotary

Date: 05/15/2025